## Kroger Grocery & Baking Co. v. Diebold.

Jan. 17, 1939.

350

DAVIS, BOEHL, VISER & MARCUS for appellant.
JULIUS LEIBSON and CHAS. W. MORRIS for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Mrs. Elgie Diebold brought this action against the Kroger Grocery & Baking Company to recover damages in the sum of $5,150, for injuries received by her on May 30, 1936, in the defendant's store located on the west side of Fourth Street in Louisville, Kentucky. She alleged that she was caused to and did slip on the floor of the store because of its dangerous, unsafe, and slick condition, and that such unsafe condition was known to the defendant or could have been known to it by the exercise of ordinary care and was unknown to her prior to the time she was injured. Upon the trial of the case the jury returned a verdict for the plaintiff for $500, and, from the judgment entered thereon, the defendant has appealed. It seeks a reversal of the judgment chiefly on the ground that the trial court erred in overruling its motion for a directed verdict in its favor. It also argues that the instructions given by the court are erroneous.

Appellee, accompanied by her sister, Mrs. Minerva Simpson, went into appellant's store in the afternoon of May 30, 1936, for the purpose of purchasing soap. She testified that as she was passing the fish counter her left foot slipped and she fell, breaking a bone in her foot and suffering other injuries of which she complained in her petition and on the trial. She stated that after she fell she discovered that she had stepped on a wet spot on the floor which caused her to slip and fall. Mrs. Simpson testified that her sister fell near the fish counter, and that she saw water dripping from the counter onto the floor which produced the wet, slick spot on which her sister slipped. Mrs. Dollie M. VeVoto, a witness for the defendant, testified that she was in the defendant's store on May 30, 1936, demonstrating the products of a wholesale firm by which she was employed, and that she was stationed at a counter across the aisle from the fish counter. She saw Mrs. Diebold fall, and heard her say

she was all right after she had been assisted to her feet. The witness said Mrs. Diebold fell at a point in the aisle six feet east of the east end of the fish counter and on the opposite side of the aisle. She examined the floor at the point where Mrs. Diebold fell, and saw no water or other foreign substance. She also stated that there was no wet spot on the floor near the fish counter. Appellant's branch manager, who was in the store and saw the accident, and a number of the store employees testified that appellee fell six or eight feet east of the east end of the fish counter, and that there was no wet spot at that point or any other point in the aisle. Appellant's branch manager described the fish counter, and he and other employees of appellant testified that on the occasion in question the ice did not extend above the side of the compartment in which the fish were displayed and water from the melting ice therefore could not have dripped onto the floor. The compartment was lined with porcelain, and a drain pipe led from it to the basement and thence to a sewer in the street. Large blocks of ice were placed in the compartment and on top of these blocks were placed crushed ice and fish. Mrs. Simpson testified that the crushed ice was stacked higher than the side of the counter next to the aisle, and water from the melting ice ran over the edge of the counter and dripped onto the floor. Appellant's witnesses stated that this was impossible, but their statements were based on the theory that the ice did not extend above the side of the counter or compartment nearest to the aisle.

Photographs of the interior of the store showing the fish counter were introduced in evidence, and from these and other evidence found in the record it is obvious that water will drip onto the floor if the ice is stacked higher than the side of the counter. Neither appellee nor her sister knew, of course, how long the water had been on the floor. It is argued by appellant that, since it was not shown by the appellee that any of appellant's agents or servants knew of the presence of the water on the floor or that it had been there such a length of time before the accident happened as to impute notice to them, a peremptory instruction should have been granted. A number of cases are cited in support of this contention, but all of them present situations where the unsafe condition was created by a third person and not by the defendant or his agents or servants. Under such a state of facts, it is a well-settled rule that the store-

keeper is not liable for injuries received by one of his customers unless the unsafe condition was known to him or could have been known to him by the exercise of ordinary care. The general rule is that the proprietor of a store must exercise ordinary care to keep the premises in a reasonably safe condition so as not unnecessarily to expose his customers to danger. He is not an insurer of the safety of his customers while on the premises, but is liable only for injuries resulting from negligence on his part. F. W. Woolworth Company v. Brown, 258 Ky. 29, 79 S. W. (2d) 362; Kroger Grocery & Baking Company v. Monroe, 237 Ky. 60, 34 S. W. (2d) 929; Bridgford v. Stewart Dry Goods Company, 191 Ky. 557, 231 S. W. 22; Shapinsky & Co. v. Sapp, 153 Ky. 214, 154 S. W. 910; Russell v. Stewart Dry Goods Company, Ky., 56 S. W. 707, 22 Ky. Law Rep. 121. Negligence may consist either in failure on the part of the store proprietor to discover the dangerous condition, though created by a third person, within a reasonable time, or in the creation of the dangerous condition by himself or his agents or servants. Where he has created a dangerous condition or negligently permitted such condition to exist, knowledge on his part is inferred. Lyle v. Megerle, 270 Ky. 227, 109 S. W. (2d) 598; Rogers v. J. C. Penney Company, 127 Neb. 885, 257 N. W. 252; 45 C. J. 653. In the present case, if there was any negligence on the part of appellant it consisted in stacking the ice on the fish counter in such a manner as to cause water to drip onto the floor. There was no evidence from which it could reasonably be inferred that this condition was created by a third person.

The instruction given by the court required the jury to believe that the appellant negligently permitted water to drip or flow from the fish display counter to the floor and in the passageway used by the customers of the store before they could find for the appellee. The preponderance of the evidence supported appellant's claim that appellee did not fall at the fish counter, and that there was no water on the floor at the point where she did fall, but it is not claimed, and we are unable to say, that the verdict is flagrantly against the evidence. A directed verdict in a personal injury action is proper only when there is no conflict in the evidence or it is susceptible of but one interpretation by reasonable men. Here there was sharp conflict in the evidence as to where appellee fell and whether or not there was water

on the floor, and while the preponderance of the evidence supported appellant's theory on these issues, yet the weight to be given the evidence and the credibility of the witnesses were questions to be determined by the jury.

The instructions are criticised because they did not submit to the jury the question of notice. Since, as we have seen, notice to appellant was inferred under the circumstances, an instruction on notice was not necessary. Appellant tendered an instruction to the effect that if the appellee fell at the place testified to by the employees of appellant, which was six or eight feet east of the fish display counter, and that at said place there was no foreign substance or water on the floor, then the jury should find for the defendant. The court's refusal to give the tendered instruction is relied upon as a reversible error, but we think the instructions given clearly presented the issues in the case. Under them the jury was required to believe that the plaintiff had been caused to fall by water in the passageway which had dripped from the fish display counter, and unless they so believed they were directed to find for the defendant.

Finding no error prejudicial to appellant's substantial rights, the judgment is affirmed.