RENDERED: AUGUST 4, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1191-MR

RHONDA BEINLEIN                                                                    APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.             HONORABLE MARY M. SHAW, JUDGE
ACTION NO. 17-CI-005021


KIDZ UNIVERSITY, INC.                                                              APPELLEE

AND


NO. 2021-CA-1248-MR


DAVID LEN PITTS; J. DAVID PITTS,
JR.; KIDZ UNIVERSITY, INC.; AND
ROCK COSMOPOLITAN CHURCH,
INC.                                                                       CROSS-APPELLANTS


CROSS-APPEAL FROM JEFFERSON CIRCUIT COURT
v.             HONORABLE MARY M. SHAW, JUDGE
ACTION NO. 17-CI-005021


RHONDA BEINLEIN, AS PARENT
AND STATUTORY GUARDIAN ON
BEHLAF OF H.B. AND N.B.,
MINORS                                                                      CROSS-APPELLEE

** ** ** ** **

BEFORE:  CALDWELL, GOODWINE, AND MᴄNEILL, JUDGES.

MᴄNEILL, JUDGE: Rhonda Beinlein ("Beinlein") appeals from the Jefferson

Circuit Court's judgment following a jury trial; Kidz University, Inc. ("Kidz

University") cross-appeals from the same judgment.  For the reasons below, we

affirm both appeals.

Beinlein's children, H.B. and N.B., ages ten and eight respectively,

attended Kidz University daycare in 2015.  In May of that year, H.B. and N.B.

reported to Beinlein that Kidz University Director Carrie Blankenship

("Blankenship") and employee Nikoletta Nunley ("Nunley") were abusing other

children.  Allegations included that Blankenship was shoving, hitting, and cursing

at the children.  Video footage from the daycare later verified the abuse.  Beinlein

reported the allegations to authorities and Blankenship subsequently pleaded guilty

to two counts of fourth-degree assault.  As a result of the incident, Kidz University

permanently closed.

On September 22, 2017, Beinlein filed a complaint in Jefferson

Circuit Court against Kidz University, its owners, Nunley, and Blankenship

alleging H.B. and N.B. suffered physical, emotional, and psychological injuries

from witnessing the abuse, and that Kidz University was vicariously liable for its

employees' actions.[1] Blankenship did not answer the complaint and the trial court entered a default judgment against her in the amount of $650,000.00. The Kidz University defendants denied any liability. The parties underwent mediation and submitted an agreed order dismissing all claims except the vicarious liability claim pertaining to Blankenship's actions.

Following the agreed order of partial dismissal, both parties filed motions for summary judgment on the vicarious liability issue. The trial court denied both motions, holding that neither party had provided sufficient evidence on whether Blankenship was acting in the scope of employment when the abuse occurred. Beinlein then filed a renewed motion for partial summary judgment on the liability issue,[2] along with an affidavit from Blankenship.

The affidavit stated that Blankenship's actions were not committed "out of personal bias or ill will toward any child" nor was she "personally motivated to harm any child[.]" It further claimed that at all times she "was acting in the course and scope of [her] employment as Director of Kidz University[,]" and "never intended anything other than accomplishment of my job running a daycare . . . and disciplin[ing] . . . the children attending the daycare." According to the

---

[1] The complaint stated claims for assault, negligence per se, negligence, intentional infliction of emotional distress, failure to hire, train, and supervise, and punitive damages.

[2] Kidz University also filed a motion for summary judgment to dismiss any vicarious liability claim relating to employee Nunley's actions that might potentially remain, pursuant to the agreed order of partial dismissal.

affidavit, all of Blankenship's actions were motivated by her desire to "please the owners of Kidz University . . . ."

Blankenship conceded she was "overwhelmed by stress, resentment and anger about my hours, my pay, the poor staffing situation and the lack of input or assistance from the [owners of Kidz University,]" and "let my frustration and anger and stress get the better of me . . . ." She acknowledged that she "was ill-equipped emotionally to handle the stress" of the job. The trial court again denied the motion, finding that "many of the reasons [Blankenship] provides for her actions speak of personal reasons disconnected from any interest of her employer. Thus issues of material fact remain as to vicarious liability . . . ."

A jury trial was held on the issue of vicarious liability. Videos of the abuse were presented as evidence, but Blankenship did not testify. David Pitts, Jr. testified he was unaware of the abuse and that the daycare had a posted policy against abusing children. Video cameras had been installed to protect the children, and he reviewed surveillance video once a week or every other week.

Following the evidence, both parties moved for directed verdicts on vicarious liability which were denied. The trial court also ruled Beinlein could not recover punitive damages because that claim had been dismissed pursuant to the agreed order of partial dismissal. The jury found Blankenship was acting in the

course and scope of her employment and in furtherance of Kidz University's business when she physically abused children and awarded $26,500.00 in damages.

Beinlein filed a motion to set aside the $26,500.00 damage award and enter a new judgment for damages in the amount of $650,000.00, consistent with the trial court's default judgment entered against Blankenship. She also filed a motion for a new trial on punitive damages. Kidz University also filed a motion for judgment notwithstanding the verdict, arguing, as it did on directed verdict, that it was not vicariously liable for Blankenship's abuse as a matter of law. The trial court denied all motions. These appeals followed.

Turning first to Beinlein's appeal, she argues the trial court erred in denying summary judgment and a directed verdict on the issue of Kidz University's vicarious liability for Blankenship's actions. As the jury found in favor of Beinlein on her vicarious liability claim, we find these arguments moot.

Beinlein next argues the trial court erred in having the jury determine damages rather than setting damages at $650,000.00 pursuant to the default judgment entered against Blankenship. Beinlein claims to have preserved this error in both her motion for partial summary judgment and in her motion for judgment notwithstanding the verdict. In both instances, we find this argument waived. While Beinlein requested the trial court enforce the default judgment damage award against Kidz University in her motion for partial summary

judgment, Beinlein subsequently filed a renewed motion for partial summary judgment asking the trial court to "enter an order setting the matter for a one-day jury trial on damages."

As to her motion for judgment notwithstanding the verdict, Beinlein argues the trial court erred in submitting the issue of compensatory damages to the jury. However, Beinlein did not object to the trial court's instruction on damages and in fact submitted her own damages construction. Therefore, she has waived this issue. Further, "[o]bjections to jury instructions in a motion for judgment notwithstanding the verdict are 'too late' to preserve the argument for appeal." *See Morris v. Boerste*, 641 S.W.3d 688, 695 (Ky. App. 2022) (citation omitted).

Even if this issue were properly before us, we find no error. "As a general rule, in an action for unliquidated damages, a defaulting party admits liability but not the amount of damages." *Howard v. Fountain*, 749 S.W.2d 690, 693 (Ky. App. 1988) (citations omitted). And here, the default judgment was entered against Blankenship, not Kidz University. Kidz University denied vicarious liability in its answer to the complaint and requested a jury trial. As long as the issues are raised by its pleadings, an employer "is entitled to try the issues of negligence, respondeat superior and the amount of damages." *United Salt Corp. v. McKee*, 628 P.2d 310, 313 (N.M. 1981).

Beinlein next argues that the trial court erred in failing to instruct the jury on punitive damages. The trial court held that Beinlein's punitive damages claim was precluded by the agreed partial order of dismissal. We agree. The construction and interpretation of a contract are questions of law and are reviewed *de novo*. *Hazard Coal Corp. v. Knight*, 325 S.W.3d 290, 298 (Ky. 2010) (citations omitted).

The agreed order dismissed all claims except "the alleged vicarious liability claims relating to co-defendant Carrie Blankenship with respect to defendant Kidz University . . . ." Beinlein argued to the trial court, as she does on appeal, that punitive damages are simply an element of her vicarious liability claim, and therefore, not part of the agreed order of dismissal. However, in Kentucky "punitive damages [are] a separate claim and not merely an additional remedy along with compensatory damages." *Chesley v. Abbott*, 524 S.W.3d 471, 480 (Ky. App. 2017) (citing *MV Transp., Inc. v. Allgeier*, 433 S.W.3d 324, 327 (Ky. 2014)). Here, Beinlein's complaint stated a separate claim for punitive damages; the agreed order of partial dismissal dispensed with all claims except the vicarious liability claim. The language of the agreement is clear. Therefore, we find no error.

Beinlein next argues the trial court erred in excluding three video clips of Nunley's alleged abuse. Before trial, Beinlein requested to play five video clips

of Nunley committing acts of alleged abuse against children. Beinlein argued that because Blankenship was responsible for training and supervising Kidz University's employees, evidence of Nunley's misdeeds was evidence of Blankenship's negligence and, thus, relevant to vicarious liability and damages. The trial court agreed but limited Beinlein to two video clips, finding more to be unduly prejudicial.

We review a trial court's evidentiary rulings for abuse of discretion. *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 577 (Ky. 2000) (citations omitted). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* at 581 (citation omitted).

Generally, all relevant evidence is admissible. *Hall v. Commonwealth*, 645 S.W.3d 383, 391 (Ky. 2022) (citing KRE[3] 402). However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of undue prejudice . . . or needless presentation of cumulative evidence." KRE 403. "Evidence is unduly prejudicial if it is harmful beyond its natural probative force, meaning that it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise may cause a jury to base its decision on something other than the established

---

[3] Kentucky Rules of Evidence.

propositions in the case." *Hall*, 645 S.W.3d at 391 (internal quotation marks and citation omitted). "Whether relevant evidence should be excluded as unduly prejudicial or needlessly cumulative is also a matter we leave to the trial court's sound discretion." *Gaither v. Commonwealth*, 521 S.W.3d 199, 205 (Ky. 2017) (citation omitted).

Here, the trial court allowed Beinlein to introduce two video clips of Nunley's alleged abuse in addition to video clips showing Blankenship's abuse. The jury saw ample evidence of Blankenship's acts and omissions to judge whether they were in the scope of employment and to assess damages. Any additional video clips would have little probative value. *See Hall v. Commonwealth*, 468 S.W.3d 814, 823-24 (Ky. 2015) (citation omitted) ("The probative force of a particular item of evidence is . . . inherently dependent upon the overall probativeness of other available evidence on that point."). Further, the acts of alleged abuse were committed against children, evidence particularly prone to arouse the jurors' sympathies and provoke their instinct to punish. We find no error.

Turning to Kidz University's cross-appeal, it argues the trial court erred in denying its motion for judgment notwithstanding the verdict. Specifically, it argues there is no evidence Blankenship's intentional abuse of students was in the scope of her employment.

"When this Court reviews a trial court's decision to deny a motion for judgment notwithstanding the verdict, we apply the same standard of review that we use when reviewing a lower court's decision to deny a motion for a directed verdict." *Radioshack Corp. v. ComSmart, Inc.*, 222 S.W.3d 256, 261 (Ky. App. 2007) (citation omitted). "[T]he trial court may only grant judgment notwithstanding the verdict where 'there is a complete absence of proof on a material issue in the action, or if no disputed issue of fact exists upon which reasonable men could differ.'" *Id.* (citation omitted). On appellate review, we will reverse the trial court's ruling only if we find that the jury could not have "reasonably . . . reached its verdict on the basis of the evidence before it[.]" *Ellison v. R & B Contracting, Inc.*, 32 S.W.3d 66, 75 (Ky. 2000).

An employer is only liable for an employee's actions committed in the scope of employment. *Patterson v. Blair*, 172 S.W.3d 361, 366 (Ky. 2005). To be within the scope of employment, "the conduct must be of the same general nature as that authorized or incidental to the conduct authorized[,]" or "calculated to advance the cause of the principal[.]" *Osborne v. Payne*, 31 S.W.3d 911, 915 (Ky. 2000) (citations omitted). "[Generally,] the master is held liable for any intentional tort committed by the servant where its purpose, however misguided, is wholly or in part to further the master's business." *Papa John's Intern., Inc. v. McCoy*, 244 S.W.3d 44, 52 (Ky. 2008) (citation omitted). However, "if the servant acts from

-10-

purely personal motives . . . which [are] in no way connected with the employer's interests, he is considered in the ordinary case to have departed from his employment, and the master is not liable." *Id.* (internal quotation marks and citation omitted). Thus, "the focus is consistently on the purpose or motive of the employee in determining whether he or she was acting within the scope of employment." *Id.* at 51 (citation omitted).

In denying both parties' motions for summary judgment on vicarious liability, the trial court relied upon Blankenship's affidavit which provided both employment-related and personal reasons for her actions and found that genuine issues of material fact existed for trial. For example, Blankenship said her intent was never to harm any child but only to accomplish her job in running the daycare and disciplining children. However, she conceded she let her "frustration and anger and stress get the better" of her.

While this affidavit was not introduced into evidence at trial, and Blankenship did not testify, Beinlein introduced video evidence of the incidents and the circumstances surrounding them. In one video, a child can be seen taking a seat between two other children on a long bench. Blankenship grabs the child by the arm and pushes him to the floor, saying "I'm tired of you doing that type of stuff – sitting right on top of kids." She then asks the child if he needs a nap and

tells him to apologize to the other children. He refuses and she pulls him up by the arm and says "ok then, take a nap, that's all there is to it. Now you're done."

From this evidence, a jury could reasonably conclude that Blankenship believed she was disciplining children as part of her job. As noted above, a master is generally liable "for any intentional tort committed by the servant where its purpose, however misguided, is wholly or in part to further the master's business." *Papa John's Intern., Inc.*, 244 S.W.3d at 52 (citation omitted). While Kidz University argues abusing children does not further its business, the relevant issue is Blankenship's motive, "however misguided." The question on appeal is whether the jury could not have "reasonably . . . reached its verdict on the basis of the evidence before it[.]" *Ellison*, 32 S.W.3d at 75. We find no error.

Based upon the foregoing, the judgment of the Jefferson Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT/CROSS-APPELLEE:

Jeffrey Allan Sexton
Michael R. Mazzoli
Louisville, Kentucky

BRIEF FOR APPELLEES/CROSS-APPELLANTS:

Robert T. Watson
Louisville, Kentucky